UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORMA O'DAY,

       Plaintiff,

v.                                                         Case No. 1:13-cv-452
                                                              Hon. Gordon J. Quist

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for widow's insurance benefits.

       Plaintiff was born on April 5, 1956 (AR 176).[1] She alleged a disability onset date of January 1, 1986 (AR 29). Plaintiff graduated from high school and had previous employment as a maid, lab tech, busboy and filer (AR 182, 187). Plaintiff identified her disabling conditions as back problems, gout in her feet, swelling of her feet and knee problems (AR 181). On December 23, 2008, Administrative Law Judge (ALJ) Paul W. Jones reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 46-52). Plaintiff filed a request for review with the Appeals Council, which entered an order on December 15, 2010, granting review and remanding for a new hearing (AR 29, 40-42). On June 26, 2011, ALJ Donna J. Grit reviewed plaintiff's claim on remand, and entered a decision denying benefits (AR 29-38). This decision, which was later approved by the

---

[1] Citations to the administrative record will be referenced as (AR "page #").

Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

2

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

**II. ALJ'S DECISION**

Plaintiff's claim failed at the fifth step. At step one, the ALJ found that plaintiff met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act, 42 U.S.C. § 402(e), being an the unmarried widow of the deceased insured worker who had attained the age of 50 (AR 32). Plaintiff did not engage in substantial gainful activity from January 1, 1986 (the alleged onset date) through November 30, 2009 (the end of the prescribed period) (AR 32).[2] At step two, the ALJ found that plaintiff had severe impairments of pulmonary hypertension and atrial fibrillation (AR 32). At step three, the ALJ found that prior to November 30, 2009, plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, specifically Listing 4.02 (chronic heart failure) (AR 33-34).

The ALJ decided at the fourth step:

---

[2] A widow of a person who died fully insured may be entitled to widow's benefits. *See* 20 C.F.R. § 404.335. To be eligible for benefits, a widow, such as plaintiff, must establish that she had a disability which began before the end of the statutorily prescribed period of time. *Id.* at § 404.335(c). As the ALJ explained:

> Other issues are whether the claimant is the widow of the deceased worker, has attained the age of 50, is unmarried (unless one of the exceptions in 20 CFR 404.335(e) apply), and has a disability that began before the end of the prescribed period. The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years (i.e., 84 months) after the worker's death or 7 years (i.e., 84 months) after the widow was last entitled to survivor's benefits, whichever is later.
>
> In this case, the claimant's prescribed period began on November 2, 2002, the date the wage earner died. Her prescribed period ended on November 30, 2009, which is the last day of the 84th month following the month the prescribed period began. Therefore, the claimant must establish that her disability began on or before November 30, 2009 in order to be entitled to widow's insurance benefits based upon disability (which also known as disabled widow's benefits).

(AR 30).

> [T]hat the claimant has had the residual functional capacity to perform less than the full range of light work as defined in 20 CFR 404.1567(b). She has been able to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours and sit for 2 hours in an 8-hour workday (with normal breaks); occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; and frequently balance, stoop, crouch, kneel, and crawl.

(AR 34). The ALJ also found that plaintiff had no past relevant work (AR 23).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the national economy (AR 37-38). Specifically, plaintiff could perform the following work: assembler (16,000 jobs); packer (10,000 jobs); and custodian (5,000 jobs) (AR 37-38). Accordingly, the ALJ determined that plaintiff was not been under a disability, as defined in the Social Security Act, from January 1, 1986 (the alleged onset date) through November 30, 2009 (the end of the prescribed period) (AR 38).

### III. ANALYSIS

Plaintiff has raised three issues on appeal:

**A. The ALJ failed to carry her burden set forth by the Appeals Council by failing to consider Plaintiff's residual functional capacity [RFC] during the entire period at issue and provide a rationale with specific references to the evidence in the record in support of the Plaintiff's RFC as well as to pose additional hypothetical questions to the vocational expert reflecting the specific capacity / limitations established by the record as a whole.**

Plaintiff contends that the ALJ failed to comply with the Appeals Council's instructions on remand. As discussed, after ALJ Jones entered a decision denying benefits, the Appeals Council entered an order on December 15, 2010, remanding the case back to an ALJ for a new hearing (AR 40-42). The issues to be resolved on remand involved assigning exhibit numbers to documents and re-evaluating the opinion of a non-treating consultative examiner, Dr. R. Scott

Lazzara (AR 40). The Appeals Council's order stated that upon remand the ALJ was to address four matters (summarized as follows): admit pertinent documents in plaintiff's electronic file part of the record; obtain additional evidence regarding plaintiff's impairments "in order to complete and update the record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence"; give further consideration to plaintiff's maximum RFC "during the entire period at issue"; and "[i]f necessary, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base" (AR 40-41).

After ALJ Grit issued her decision denying benefits on remand, plaintiff filed a request for review of her decision with the Appeals Council. On March 4, 2013, the Appeals Council found no reason to review ALJ Grit's decision and denied plaintiff's request for review (AR 4). In reaching this determination, the Appeals Council considered plaintiff's arguments and determined "that this information does not provide a basis for changing the Administrative Law Judge's decision" (AR 5). The Appeals Council also reviewed evidence relied upon by plaintiff and evaluated it as follows:

> We also looked at the Medical Source Statement from Dr. Gregory Hammond, dated September 5, 2012, with an attached rheumatology consult, dated December 16, 2011 from Dr. Hayden Moorman, and a Medical Source Statement from cardiologist Dr. Stephen Peck, dated August 31, 2012 (AR 5). The Administrative Law Judge decided your case through November 30, 2009, the date the prescribed period of entitlement to disabled widow's insurance benefits ended. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability action.

(AR 5). In short, the Appeals Council did not find that ALJ Grit failed to comply with the Council's December 15, 2010 order of remand.

This Court rejected a similar claim of error in *Brown v. Commissioner of Social Security*, No. 1:08-cv-813, 2009 WL 465708 at *5-6 (W.D. Mich. Feb. 24, 2009):

> Plaintiff's claim of error is without merit because it seeks to have this court review an internal agency matter. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute. . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (internal citations omitted.) The existence of subject matter jurisdiction may be raised at any time, on a party's motion or *sua sponte* by the court. *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). Judicial appeals of Social Security decisions are authorized by 42 U.S.C. § 405(g), which provides in pertinent part:
>
>> Any individual after any final decision of the Commissioner made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner may allow.
>
> Section 405(g) "clearly limits judicial review to a particular type of agency action." *Califano v. Sanders*, 430 U.S. 99, 108 (1977). Although § 405(g) limits review to a "final decision of the Commissioner," that term is not defined in the statute. *See Weinberger v. Salfi*, 422 U.S. 749, 766 (1975). Nevertheless, the regulations provide that a claimant must complete a four-step administrative review procedure to obtain a judicially reviewable final decision of a claim for benefits: (1) initial determination; (2) reconsideration; (3) hearing before an administrative law judge; and, (4) Appeals Council review. *See* 20 C.F.R. §§ 404.900(a)(1)-(4); 416.1400(a) (1)-(4). When a claimant has completed these four steps, the agency "will have made [its] final decision" and the claimant "may request judicial review by filing an action in a Federal district court." *See* §§ 404.900(a)(5); 416.1400(a)(5).
>
> With respect to step 4, Appeals Council review, the applicable regulations provide that "the administrative law judge shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 416.1477(b). Whether an ALJ complies with an Appeals Council order of remand is an internal agency matter which arises prior to the issuance of the agency's final decision. By failing to remand the matter a second time, it appears that the Appeals Council considered the ALJ's July 25, 2006 review to be in compliance with the Council's previous order of remand (AR 5). Section 405(g) does not provide this Court with authority to review intermediate agency decisions that occur during the administrative review process. *See, e.g., Bass v. Astrue*, No. 1:06-cv-591, 2008 WL 3413299 at *4

(M.D.N.C. Aug. 8, 2008) ("[t]he Court does not review internal, agency-level proceedings, and therefore will not address whether the ALJ complied with specific provisions of the Appeals Council's remand order"). Accordingly, plaintiff's appeal should be dismissed for lack of jurisdiction.

*Brown*, 2009 WL 465708 at *5-6. *See also, Caldwell v. Colvin*, No. 13-131-DLB, 2014 WL 3747548 at *3 (E.D. Ky. July 29, 2014) (stating that in the *Brown* decision, "the court ably explained why District Courts lack jurisdiction to consider plaintiffs' claims that the ALJ failed to comply with Appeals Council's remand order").

Similarly, in the present case, by failing to remand the matter a second time, the Appeals Council considered ALJ Grit's decision to be in compliance with the Council's December 15, 2010 order of remand. This Court does not have authority under § 405(g) to review this intermediate agency decision. *See Caldwell*, 2014 WL 3747548 at *3; *Brown*, 2009 WL 465708 at *5-6; *Bass*, 2008 WL 3413299 at *4. Accordingly, plaintiff's claim of error should be denied.

### B. The ALJ erred to articulate a valid reason for her finding that Plaintiff is not credible.

Plaintiff contends that the ALJ improperly discredited plaintiff's complaints regarding the intensity and persistence of her symptoms. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Id.* "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The

court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

The ALJ addressed plaintiff's credibility as follows:

> The claimant has testified that she has had a cardiac pacemaker since 2007 and that she recently was hospitalized to have her pacemaker adjusted. She reported that her symptoms include shortness of breath, exhaustion, tiredness, dizziness with lifting, a loss of balance, weakness, shakiness, nausea, difficulty sleeping at night, need to go to the bathroom a good deal at night, and aching feet and hands. While she generally tries to stay on the first floor of her house, she will use the handrail when she climbs the stairs to the second floor. She additionally stated that her parents help her with doing things around the house.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant's daily activities on and prior to November 30, 2009 disclosed an ability to do at least a limited range of light work. While the claimant testified as to having debilitating symptoms and limitations at the present time such that she requires the assistance of family members, she had full and varied activities of daily living on and prior to November 30, 2009. In May 2006 and February 2009, the claimant reported that she prepared simple meals, did the dishes and the laundry, did light housekeeping chores (including vacuuming), socialized with friends and family

> members, cared for her dog, watched television, drove short distances, shopped for groceries, handled financial matters, and cared for her personal needs (Exhibits 5E, 10E).
>
> On and prior to November 30, 2009, the claimant had a pacemaker and required only conservative care and treatment for her heart issues. Her condition was primarily managed by prescribed medication. Her medications on and prior to November 30, 2009 have been entered into the record under Exhibits 7F, 9F, and 14F. There is no indication in the medical reports that the claimant had significant side effects as a consequence of either her treatment or medication usage on or prior to November 30, 2009.

(AR 34-35).[3]

> The ALJ also stated:
>
> Notably, however, the claimant has been given no limitations specific to her arthralgias that are consistently supported by objective medical findings. Indeed, in September 2006, the consultative physician, R. Scott Lazzara, M.D., an internist, specifically concluded that the claimant had no neurological or orthopedic diagnoses. Upon examination, the claimant's strength and grip were normal. Her only significant orthopedic finding was that she had some trouble squatting (Exhibit 4F).

(AR 32). The Court notes that while meeting with Dr. Lazzara in 2006, plaintiff stated that she could lift about 15 pounds, and that "she can do her household chores but her mother and father have to come over and help do the heavy cleaning because of her arthralgias and fatigue" (AR 230).

In evaluating plaintiff's credibility, the ALJ relied on her ability to perform daily activities. "An ALJ may also consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments." *Walters*, 127 F.3d 525, 532 (6th Cir. 1997). While plaintiff may not have engaged vigorously in all of these activities, such endeavors are not indicative of an invalid, incapable of performing the type of work identified by the ALJ. *See, e.g., Pasco v. Commissioner of Social Security*, 137 Fed. Appx. 828, 846 (6th Cir. 2005) (substantial

---

[3] It appears that the ALJ erroneously referred to plaintiff's statements in Exhibit 5E. The record reflects that those statements appear in Exhibit 3E, which plaintiff signed on May 14, 2006 (AR 155-62). The Court notes that the handwritten identification for Exhibit 3E could be interpreted as "5E" (AR 155).

evidence supported finding that plaintiff was not disabled where plaintiff could "engage in daily activities such as housekeeping, doing laundry, and maintaining a neat, attractive appearance" and could "engage in reading and playing cards on a regular basis, both of which require some concentration") (footnote omitted); *Bogle v. Sullivan*, 998 F.2d 342, 348 (6th Cir. 1993) (a claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability); *Gist v. Secretary of Health and Human Services*, 736 F.2d 352, 358 (6th Cir. 1984) (a claimant's capacity to perform daily activities on a regular basis will militate against a finding of disability).

Plaintiff also contends that the ALJ "hand picked particular portions of Dr. Peck's office notes where he states that Plaintiff is 'doing well'". Plaintiff's Brief at pp. 13-14. However, plaintiff does not cite any particular portion of the ALJ's decision to support her claim, but merely cites the entire decision (AR 26-38). The ALJ's decision devoted four paragraphs detailing plaintiff's treatment with her cardiologist, Dr. Peck (AR 33-34). In this regard, as of June 1, 2006, Dr. Peck concluded "that although [plaintiff] had mild cardiomyopathy with chronic atrial fibrillation, she was doing well" (AR 33). Plaintiff received a cardiac pacemaker in 2007, was doing well in January 2008, and as recently as April 2, 2010 (four months after the end of the prescribed period), Dr. Peck documented "that although [plaintiff] had cardiomyopathy, her symptoms of heart failure were controlled" and that "even though she had chronic atrial fibrillation, she had a paced rhythm and was on anticoagulant therapy" (AR 34).

The Court finds no compelling reason to disturb the ALJ's credibility determination. *Smith*, 307 F.3d at 379. Accordingly, plaintiff's claim of error should be denied.

      **C.      The ALJ erred by failing to articulate a valid basis for not giving the opinions of Plaintiff's treating doctor. Dr. Geoffrey Hammond, controlling or great weight.**

Plaintiff contends that the ALJ did not defer to Dr. Hammond in his capacity as her treating physician for more than 24 years, that the doctor's opinion was well supported and that the ALJ improperly disregarded Dr. Hammond's opinions in favor of those expressed by plaintiff's treating rheumatologist, Robert A. Roschmann, M.D.

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and

12

(2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Here, the ALJ addressed Dr. Hammond's opinion as follows:

> On August 28, 2008, Geoffrey Hammond, M.D., discussed the claimant's physical work-related activities and limitations. The doctor believed that the claimant's allegation that she needed to take unscheduled breaks to recline for about 30 minutes to an hour each time, twice a day would be medically reasonable and expected in her case (Exhibit 19F). In a January 21, 2009 narrative report, Dr. Hammond further offered the opinion that the claimant could not use her hands for more than 15 minutes or so without having to rest them and that the claimant would be unable to walk or stand for more than 30 minutes or so. Dr. Hammond concluded that in observing the claimant, when asked to make movements, change position, or grasp an object, it would be easy to assess that she had moderate to marked discomfort and an inability to do continuous or repetitive motions (Exhibit 11F).
>
> As discussed above, although the claimant's family doctor recorded the claimant's various medical complaints, the doctor never performed the examinations that would show that the claimant had reduced functioning. Indeed, Dr. Hammond has acknowledged that he did not evaluate range of motion when he examined the claimant (Exhibit 11F). Moreover, the additional records that were submitted post-hearing as Exhibits 20F and 21F do not support the claimant's claim for disability on or prior to November 30, 2009. Exhibit 20F discloses that the claimant's symptoms have only become significant since 2010, which is outside her prescribed period. Exhibit 21F contains rheumatology examination records from 2006 wherein the claimant complains of multiple arthralgias. As Dr. Roschmann has documented, the claimant's physical examination, however, was quite benign. In view of the inconsistencies cited, I do not give controlling, or even significant weight, to Dr. Hammond's opinions.

(AR 36).

With respect to Dr. Roschmann's opinion, the ALJ found in pertinent part as follows:

13

> [M]agnetic resonance imaging (MRI) of March 2002 of the claimant's lumbar spine showed only subtle degenerative changes but with no extruded disc or nerve impingement (Exhibit 8F/18). November 2006 x-rays of the claimant's knees, hands and feet also revealed only minimal erosive features. Most persuasive are the findings of Robert A. Roschmann, M.D., a rheumatologist, in November 2006. Dr. Roschmann observed that the claimant had good range of motion of her shoulders, elbows, wrists, hips, knees, ankles, and toes. While she had mild Bouchard's and Heberden's nodes, crepitus of the knee, and significant bunion formation, no synovitis was noted. Moreover, she presented normal deep tendon reflexes and motor and sensory examinations. Her straight leg raising test was negative. Dr. Roschmann assessed that the claimant did not have any mixed connective tissue disorder or inflammatory arthropathy. (Exhibit 21F/2, 18). Based upon the foregoing, I conclude that the claimant did not have a musculoskeletal or immune system impairment that was severe on or prior to November 30, 2009.

(AR 32-33).

It is the function of the Commissioner to resolve conflicts in the medical evidence. *See King v. Heckler*, 742 F.2d 968, 972-74 (6th Cir.1984). *See, e.g., Jenkins v. Chater*, 76 F.3d 231, 233 (6th Cir. 1996) ("[i]t is within the authority of the ALJ to resolve any conflicts among the opinions of treating and examining physicians"). "When deciding if a physician's opinion is consistent with the record, the ALJ may consider evidence such as the claimant's credibility, whether or not the findings are supported by objective medical evidence, as well as the opinions of every other physician of record." *Coldiron v. Commissioner of Social Security*, 391 Fed.Appx. 435, 442 (6th Cir. 2010). An ALJ has good cause to reject the opinion of one treating physician where there were contrary opinions of other treating physicians supported by objective medical evidence. *Milam v. Bowen*, 782 F.2d 1284, 1287 (5th Cir. 1986). It is not the duty of the courts to resolve a conflict between a claimant's treating physicians. *Price v. Chater*, No. 96-6395, 1997 WL 219754 at *1 (6th Cir. April 30, 1997).

Here, ALJ Grit pointed out inconsistencies between the opinions of the two treating physicians, i.e., a specialist, plaintiff's treating rheumatologist Dr. Roschmann and her primary

treating physician, Dr. Hammond. After reviewing these opinions, the ALJ chose to adopt the opinion of the specialist, Dr. Roschmann, which indicated that plaintiff did not have a musculoskeletal or immune system impairment that was severe on or prior to November 30, 2009 (the end of the prescribed period). In evaluating the opinions of treating physicians, "[a] specialist's opinion is generally entitled to more weight than a non-specialist." *Wolfe v. Social Security Administration*, 39 Fed. Appx. 317, 320 (6th Cir. 2002). *See* 20 C.F.R. § 404.1527(d)(5) ("We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."). Given this record, the ALJ did not commit error in adopting the opinion of the treating specialist. Accordingly, plaintiff's claim of error should be denied.

### IV. Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be **AFFIRMED**.


Dated: November 3, 2014         /s/ Hugh W. Brenneman, Jr.
                                HUGH W. BRENNEMAN, JR.
                                United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).